GLASSEY V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-02-142-CR

DONNIE LEE GLASSEY APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Donnie Lee Glassey appeals his jury conviction for the offense of attempted capital murder.  Appellant raises three issues for our review:  (1) that the evidence was legally insufficient to support his conviction; (2) that the trial court abused its discretion by failing to grant two motions for mistrial; and (3) that the trial court erred in failing to charge the jury on the law of attempted murder.  We will affirm.

II.  Factual and Procedural Background

Appellant was indicted for the offense of the attempted capital murder of Susan Burns by strangulation with a cord during the course of committing or attempting to commit retaliation. 
See
 
Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon 2003).
(footnote: 1)  The indictment also included an enhancement notice concerning Appellant’s prior convictions for the federal felony offenses of mail fraud and making and signing a false tax return.  At trial, the State offered testimony that Appellant was the leader of a theft ring.  Among others, DeeDee Schneider, Darren Soltier, Garla McCullough, Joe Briton, and Susan Burns were involved in the theft ring.  Kendrick Chavez, who was known as  K Dog, supplied them with cocaine.

Appellant was suspected of being involved in a robbery at a Boot Town store in Hurst; however, Burns and Briton were arrested for the robbery.  Appellant bonded them out of jail.  Burns testified that she told Appellant that he needed to turn in the people who actually committed the robbery because she was not going to jail for a crime that she did not commit.  Burns further testified that she told Appellant that she was going to tell the police, to which she said Appellant replied that “[she] had better keep [her] mouth shut.”  

K Dog testified that, during the first week of December 2000, Appellant told him that he wanted to kill Burns, but K Dog did not think that Appellant was serious.  Appellant asked K Dog at least three times to kill Burns, offering to pay him between $1,000 and $20,000.  Ultimately, K Dog refused to kill Burns; however, he testified that he overheard conversations between Calvin Walker and Appellant in which Appellant discussed killing Burns with poisoned crack cocaine and antifreeze.  According to K Dog, Walker told Appellant that he “could do it with his bare hands.”  K Dog recalled Appellant and Walker discussing a price of $1,000.

Schneider testified that, to prevent Burns and Briton from implicating Appellant in the robbery, Appellant wanted to kill Burns and Briton.  According to Schneider, Appellant planned to kill them by giving them Gatorade mixed with antifreeze and crack cocaine cooked with rat poison.  Schneider testified that on December 7 Appellant called K Dog and Burns and made plans to meet them at a local motel with beer, pizza, and crack cocaine.  Schneider called the police because she was concerned that Appellant was serious about killing Burns.  

During the first week of December 2000, Burns was staying with Briton and her black Labrador retriever, Harley, in room 127 at the Caravan Motel.  On December 5, Briton left because he was scared of Appellant.  Burns testified that on December 7 she spoke on the phone with Appellant, at which time he told her that he wanted to kill himself.  Feeling sorry for Appellant, Burns invited him over to her motel room to drink beer, eat pizza, and get high on cocaine.

K Dog admitted to going to the motel where Burns was staying on December 7, 2000 with Appellant and Walker, but K Dog testified that he left the room “[b]ecause if they were really going to do what they had planned on doing, [he] didn’t want to have any part of it.  [He] didn’t want to be there.”  K Dog also corroborated Schneider’s testimony that Appellant wanted to kill Burns because she was going to testify for the State against Appellant for a robbery they had committed together. 

Burns testified that Appellant came to her room with K Dog and another man, who was later identified as Walker.  Burns testified that Walker kicked Harley across the room and then asked if he would bite.  Appellant suggested that K Dog take Harley to the store, but Burns testified that she would not allow K Dog to take her dog.  Burns testified that Appellant said, “I’ll take him outside for a walk,” and he went out the door with Harley. 

As Appellant went out the door, Burns testified that Walker punched her in the side of her face and knocked her to the ground.  Burns recalled that as she was being punched, Appellant turned around and smiled.  Burns stated that while she was on the ground she saw Walker coming down at her with a cord.  She testified that she got her hand in between the cord and her throat.  She was struggling with it and screaming, pulling so hard that the cord broke.  

Burns testified that Walker twisted her neck to try to break it, jumped on her back, and broke her ribs.  Eventually, Walker got the cord around her neck again, but this time Burns was unable to get her hand underneath it.  Burns testified that she was panicking and thought that he was killing her.  She recalled having an out of body experience in which she felt herself up in the corner of the room looking down on herself, thinking, “do something . . . [t]his man is killing you.” 

Suddenly, she heard banging on the door, and Walker let go of the cord and ran out of the door.  Burns testified that she “snapped [back] in[to] [her] body” and was finally able to breathe again.  Burns told the jury that she was bruised all over and there was a cut on the side of her neck that “looked like somebody had taken a sharp, dull something and just ripped [her] neck open all the way through.” 

During the attack, Sergeant Mark Simpson went to the Caravan Motel because of Schneider’s earlier conversation with the police.  As he approached room 127, Sergeant Simpson saw Appellant standing outside with a black dog that appeared to be the size of a Labrador retriever.  Sergeant Simpson asked Appellant whether he was Briton and whether Burns was inside the room.  Appellant responded that he was not Briton, but he confirmed that Burns was inside.  As Sergeant Simpson was about to ask another question, he heard the sound of a muffled cry and something being slammed against a wall from within the room.  Sergeant Simpson also testified that he heard another noise, which sounded like a “cat wailing.”

Immediately, Sergeant Simpson began to beat on the door, identified himself as a police officer, and demanded entry.  At that point Appellant let go of the dog; banged on the window; yelled, “[T]he cops are here”; and began running from the motel.  A man, later identified as Walker, quickly emerged from the room and started running in the opposite direction from Appellant.
(footnote: 2) Because Sergeant Simpson heard more screams from inside the room, he did not pursue either man but went inside to see if the assault was continuing.  

In the room, Sergeant Simpson saw Burns on her hands and knees with what appeared to be a ligature extending down from both sides of her neck.  Sergeant Simpson testified that there was “free-flowing blood coming down from the left side of her head, . . . there were ligature marks around her neck,” and she was a “very deep, deep purplish color.”  The police later recovered pieces of an electrical cord, which Burns testified her attacker used as he attempted to strangle her.  Sergeant Simpson opined that, if used to put around a person’s neck to strangle or choke someone, the recovered ligatures constituted a deadly weapon.  

Appellant took the stand in his own defense, and he denied plotting and participating in Burns’s attempted murder.  Appellant admitted that he took Harley outside of the room and stood beside the window.  Appellant, however, denied knowing Walker, and he testified that he “never said a word to this Calvin Walker, period.”  Appellant testified that he was being set up by the police and the other members of the theft ring and that the reason he fled the scene was that he was on federal probation and had crack cocaine on him.  After considering all of the testimony and evidence presented, the jury found Appellant guilty, made a deadly weapon finding, found that he had one prior felony conviction, and assessed his punishment at forty five years’ confinement. 

III.  Legal Sufficiency

In his first issue, Appellant argues that the evidence was legally insufficient to support the verdict.  Specifically, Appellant complains that the evidence was legally insufficient because (1) the State did not prove that he was the person who caused injury to Burns by choking or strangling her with a cord and (2) the State did not prove that he solicited, encouraged, or aided Walker in the attempted murder of Burns.  We disagree.

Appellant was charged with the attempted capital murder of Burns, and the State proceeded on a theory of party liability.  
See
 
Tex. Penal Code Ann.
 § 7.02(a)(2) (Vernon 2003).  An actor is criminally responsible as a party to an offense if, acting with intent to promote or assist in the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid another person to commit the offense.  
Id
.  The evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement.  
See Burdine v. State
, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), 
cert. denied
, 480 U.S. 940 (1987); 
Cordova v. State
, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), 
cert. denied
, 476 U.S. 1101 (1986).  

The evidence must show that, at the time of the offense, the parties were acting together, each contributing to their common purpose.  
See Burdine
, 719 S.W.2d at 315.  In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to commit the offense.  
See id
.; 
Tippitt v. State
, 41 S.W.3d 316, 322-23 (Tex. App.—Fort Worth 2001, no pet.).  Although mere presence of the accused at the scene of the offense will not support a conviction, it is a circumstance which, combined with other facts, may show that the accused was a participant.  
See Beardsley v. State
, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); 
Valdez v. State
, 623 S.W.2d 317, 321 (Tex. Crim. App.  [Panel Op.] 1981) (op. on reh’g); 
Michel v. State
, 834 S.W.2d 64, 67 (Tex. App.—Dallas 1992, no pet.).

On appeal, Appellant directs us to his trial testimony in which he claimed that he was being set up by the police and the members of the theft ring.  Appellant argues that the evidence was legally insufficient to support his conviction for the attempted capital murder of Burns under party theory liability because (1) we cannot consider the testimony of Schneider and K Dog, who he asserts were accomplices as a matter of law and (2) he was merely present at the scene of Burns’s attack.  We disagree with Appellant’s assertion that we cannot consider the testimony of Schneider or K Dog.  While Schneider and K Dog may have been involved with drugs and Appellant’s theft ring, they were not accomplices to the attempted capital murder of Burns.  
See Blake v. State
, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998) (“[A] person is an accomplice if there is sufficient evidence connecting [him or her] to the criminal offense as a blameworthy participant.”); 
Barnes v. State
, 56 S.W.3d 221, 230 (Tex. App.—Fort Worth 2001, pet. ref’d) (“A witness is not deemed an accomplice because he knew of the crime but failed to disclose it, or even concealed it.”) (citations omitted).

We have reviewed the record extensively, and under the applicable standard of review, giving due deference to the fact finder’s determinations, we hold that the evidence–particularly that of Burns, as well as Schneider and K Dog–was sufficient for a rational jury to conclude beyond a reasonable doubt that Appellant was guilty of the offense and therefore was legally sufficient to support Appellant’s conviction.  
See
 
Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  Accordingly, we overrule Appellant’s first issue.

IV.  Motions for Mistrial

In his second issue, Appellant contends that the trial court abused its discretion by failing to grant two motions for mistrial.  Appellant argues that he was harmed by the introduction of prejudicial extraneous matters because the State tried to show that he was a criminal in general.  We disagree.

We review a trial court’s denial of a motion for mistrial under an abuse of discretion standard.  
See Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  Mistrials are an extreme remedy for curing prejudice occurring during trial.  
Bauder v. State
, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). They ought to be exceedingly uncommon and employed only when less drastic remedies are inadequate to the task of removing residual prejudice.  
Id
.  A mistrial is only required when the impropriety is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.  
Hinojosa v. State
, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999).  

Ordinarily, a prompt instruction to disregard will cure any prejudicial effect associated with an improper question and answer.  
Ovalle v. State
, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); 
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (op. on reh’g).  To determine whether a curative instruction is sufficient to cure prejudice from an improper question or answer, we must look at the facts of each case.  
Hernandez v. State
, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), 
cert. denied
, 500 U.S. 960 (1991).  Further, we are to presume the jury will follow the court’s instructions.  
Colburn v. State
, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

We will address each motion for mistrial in turn.  Appellant first challenges the denial of his motion for mistrial occurring in the following exchange between the State and K Dog on redirect examination:

[State]:  He was just asking you about between December 7
th
 and December 18
th
 and going to talk to the police.  And I want to ask you, did you receive any threats during that period of time?

[K Dog]:  Between the time of the incident happening?

Q.  Yes.

A.  And the time I talked with the police?

Q.  Yes.

[Defense Counsel]:  Objection, 404(b).

A.  Yes.

[Defense Counsel]:  Objection, 404(b).

THE COURT:  I’m going to sustain because of the breadth of the question.

. . . .

[Defense Counsel]:  In light of the Court’s sustaining, he did answer.  We’d ask that the jury be instructed to disregard the last answer.

THE COURT:  You’ll disregard the last answer.

[Defense Counsel]:  As the law requires, we request a mistrial.

THE COURT:  Denied. 

Here, the trial court immediately instructed the jury to disregard K Dog’s answer.  As is apparent from the court’s response that the State’s question was overly broad, there was no indication who threatened K Dog, and the State made no attempt to impute these threats to Appellant.  Additionally, the State did not refer to any threats directed at K Dog at any other time during the trial.  Thus, even if the State’s question was improper, we can see no reason why the instruction to disregard failed to cure any prejudicial effect the question might have had.  
See
 
Ovalle
, 13 S.W.3d at 783; 
Faulkner
, 940 S.W.2d at 312.  We therefore cannot say that the trial court abused its discretion when it denied Appellant’s motion for mistrial.

Appellant also challenges the denial of his motion for mistrial from the following portion of his own cross-examination:

[State]:  Were you in on the theft ring or not?

[Appellant]:  I bought merchandise.

Q.  Were you in on the theft ring or not?

A.  Yes, I bought merchandise.

Q.  So, yes, you were part of that theft ring, and Boot Town was also part of that theft ring, correct?

A.  Boot Town was not part of me, no.

Q.  You committed that offense, though?

A.  I did not.

Q.  You committed a Wal-Mart theft two days after that?

[Defense Counsel]:  Objection, 404, Judge.

THE COURT:  Sustained.

[Defense Counsel]:  Ask the Court to instruct to disregard that one.

THE COURT:  You are instructed to disregard any comment about an additional offense.

[Defense Counsel]:  As the law requires, I ask for a mistrial.

THE COURT:  That’s denied. 

Appellant failed to preserve error concerning this ruling because  evidence of Appellant’s involvement with the Wal-Mart theft came into evidence without objection during Burns’s testimony.  
See
 
Tex. R. Evid
. 103(a); 
Fuentes v. State
, 991 S.W.2d 267, 273 (Tex. Crim. App.), 
(holding that to preserve error, the objecting party must continue to object each time the objectionable evidence is offered)
, cert. denied
, 528 U.S. 1026 (1999) ; 
Garcia v. State
, 6 S.W.3d 765, 767 (Tex. App.—Fort Worth 1999, pet. ref’d) (stating general rule that when a defendant objects to evidence at trial but also allows substantially the same evidence to be admitted without objection, any error in admitting the objected-to evidence is waived) (citing 
Leday v. State
, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)).  When asked whether she ever told the police about the knowledge she was gaining about the theft ring, Burns testified, “
Well, I didn’t -- we didn’t exactly tell the police, Joe was arrested at a Wal-Mart for stealing, 
and he was involved with [Appellant]
, and the police questioned him at that point.
”  [Emphasis supplied.]  Because Appellant waived his right to complain of any impropriety in the State’s question concerning the Wal-Mart theft, we hold that the trial court did not abuse its discretion in denying Appellant’s motion for mistrial.  We therefore overrule Appellant’s second issue.

V.  Jury Charge

In his third issue, Appellant complains that the trial court erred in failing to charge the jury on the law of attempted murder.  In response, the State points out that Appellant denied any involvement in the assault and claimed he was set up by a conspiracy of thieves, dope dealers, and the police.  Thus, the State argues that the trial court properly refused to include a charge on attempted murder because there was no evidence that if Appellant was guilty at all, he was guilty of only attempted murder. 

To determine whether a jury must be charged on a lesser included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  The first step is to decide whether the offense is a “lesser included offense” as defined in article 37.09 of the code of criminal procedure.  
See
 Tex. Code Crim. Proc. Ann
. art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.  The second step requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense, and not of the greater.  
Lofton v. State
, 45 S.W.3d 649, 651 (Tex. Crim. App. 2001); 
Moore
, 969 S.W.2d at 8.

The evidence must be evaluated in the context of the entire record.  
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense.  
Id
.  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id
. If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.  
Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).

The State does not dispute that attempted murder is a lesser included offense of the offense charged.  Thus, the only issue is whether there is some evidence that would permit a rational jury to find that Appellant is guilty only of the lesser offense, and not of the greater.  The State argues that 
Zamora v. State
, 998 S.W.2d 290 (Tex. App.—Fort Worth 1999, pet ref’d) controls this issue.  

In 
Zamora
, the defendant was convicted of capital murder, and her sole issue on appeal was whether she was entitled to a lesser included charge of murder.  
Id
. at 291.  Zamora was charged as a party to the capital murder of Adrianne Jones.  
Id
. at 292.  At trial, Zamora took the stand in her own defense and testified that she only wanted to talk to the victim on the night of her murder and that “she neither intended nor planned to kidnap, murder, or harm Jones in any way.”  
Id
.  

We stated that, for Zamora to be entitled to the lesser included charge, “the jury would have to dissect Zamora’s blanket assertion of innocence to believe her denial to the kidnaping, yet disbelieve her denial to the murder.”  
Id
. at 293.  In holding that there was no rational basis for the jury to have rejected the aggravating offense of kidnaping and to have found Zamora guilty only of murdering Jones, we stated, “[I]t would be irrational in this case for the jury to  simultaneously believe that Zamora participated in the murder but not the kidnaping because Jones’s kidnaping was a prelude to her murder.”  
Id
. at 293.

Here, Appellant testified that Schneider–not Burns–committed the Boot Town robbery and that he was going to “try to help get the charges dropped off [Burns and Briton].”  Appellant further testified that he had nothing to do with the attack on Burns.  He testified that he did not know Walker and that he had never spoken to him.  Rather, Appellant testified that he went to Burns’s motel room to provide her beer, pizza, and crack cocaine.  He testified that Sergeant Simpson, Hurst police officer Wayne Price, K Dog, Burns, and Schneider were all mad at him and set him up.

For Appellant to be entitled to the lesser included charge of attempted murder, it had to be possible for the jury to rationally reject the offense of attempted capital murder by finding that Appellant committed only the offense of attempted murder, but not the aggravating element of retaliation.  
See
 
Tex. Penal Code Ann.
 § 19.03(a)(2); 
Lofton
, 45 S.W.3d at 652; 
Zamora
, 998 S.W.2d at 293.  Similar to the 
Zamora
 jury, the jury in this case would have had to dissect Appellant’s denial of any involvement with Burns’s attack to believe his denial to the retaliation, yet disbelieve his denial to the attempted murder.  
See Zamora
, 998 S.W.2d at 293.  Such a result is not supported by any evidence in the record.

We hold that the record does not reflect the existence of any evidence that would permit a rational jury to find that Appellant is guilty only of the lesser offense, and not of the greater.  
See Moore
, 969 S.W.2d at 8.  Accordingly, the trial court did not err by denying the requested charge on the lesser included offense of attempted murder.  We overrule Appellant’s third issue.

VI.  Conclusion

Having overruled all three of Appellant’s issues, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED:  August 29, 2003

FOOTNOTES
1:
Section 19.03(a)(2) states, in pertinent part, “A person commits [capital murder] if he commits murder as defined under Section 19.02(b)(1) and the person intentionally commits the murder in the course of committing or attempting to commit . . . retaliation.”  
See id
.

2:
In a separate opinion, we affirmed Calvin Walker’s conviction for the offense of attempted murder.  
See Walker v. State
, No. 2-01-518-CR, 2003 WL 21357570 (Tex. App.—Fort Worth June 12, 2003, no pet. h.) (not designated for publication).