

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00045-CV

_____

IN THE INTEREST OF K.E., K.E., D.T., AND K.E., THE CHILDREN

---

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. 18-4395-362

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

This is an ultra-accelerated appeal[1] in which Appellant K.T. (Mother) appeals the termination of her parental rights to three of her children (Kent, David, and Kevin) and her appointment as parent possessory conservator of her oldest child (Kendra),[2] following a jury trial.[3] Mother raises one issue with two parts. In the first part, Mother argues that she failed to receive due process when the trial court denied her access to most of her children during the case without an initial hearing or a review hearing. In the second part, Mother argues that the trial court failed to exclude the order denying her access to her children and testimony related to that order and failed to declare a mistrial, and that such failures resulted in an unfair comment on the weight of the evidence and unduly prejudiced the jury's findings as to endangerment by Mother and as to the best interests of the children. We affirm.

---

[1]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

[2]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights). The children are thus referred to using aliases. We refer to other family members by their relationship to the children. *See id.* (requiring courts, if needed to protect the minors' identities, to also use aliases when referring to family members); *see also* Tex. Fam. Code Ann. § 109.002(d).

[3]The father of Kendra, Kent, and Kevin, whose parental rights were terminated in the proceedings below, did not appeal. We will refer to him as Father. Mother had adopted David. The termination of the paternal rights, if any, of David's father, was not adjudicated in the proceedings below.

# I.    Background[4]

In May 2018, the Department of Family and Protective Services (the Department) obtained an order of protection and removed Kendra, Kent, David, and Kevin from their Mother's care; the Department had received several referrals reporting the withholding of food and sexual and physical abuse taking place in Mother's home.[5] The Department filed a first amended petition for conservatorship and to terminate Mother's parental rights (and the parental rights of Kendra, Kent, and Kevin's father) in June 2018. In June 2018, the trial court held an adversary hearing. That same day, the trial court signed a Temporary Order Following Adversary Hearing appointing Mother as temporary possessory conservator of the children.

In July 2018, the trial court held a Status Hearing. The Department filed a Family Service Plan for Mother and a Status Report earlier that day. That same day, the trial court signed a Status Hearing Order. The order provided that the trial court "reviewed the Visitation Plan provided by the Department." Under the heading, "Visitation Plan: [Mother]," the trial court found that Mother's visitation with the children must be supervised and stated that the trial court "further finds that [Mother] must take the

---

[4]Mother does not challenge the sufficiency of the evidence supporting the trial court's judgment. Thus, we limit our background discussion to those events necessary to provide Mother's arguments on appeal context.

[5]Other children in the home, who were Mother's nieces and nephews and not her biological or adopted children, were also removed.

following specific steps to have level of supervision reduced," but then the order left a blank space. Also under that heading, and the focal point of this appeal, is the handwritten language: "Visitation will be suspended pending recommendation from the children's therapist as to [Kendra, Kent, and David]. Visitation with [Kevin, the youngest child] shall be one hour per week supervised by the [Department.]"

Almost a week later, the Department filed a Visitation Plan (that had been signed a day earlier than the filing). That plan provided that "the parent[-]child visit is strictly held between [Mother] and [Kevin]; none others" and that "[a]ll visits must be supervised by the Department or an approved supervisor or observer." The next hearing involving Mother was a permanency hearing in November 2018.

In October 2019, the trial court held a pretrial hearing and granted Mother's motion in limine regarding "[a]ny references to any findings made by the Court." The case was tried to a jury over eight days, starting in October 2019 and resuming in January 2020.

After trial, the trial court signed a final order in accordance with the jury findings that terminated Mother's parental rights to Kent, David, and Kevin, and that appointed the Department as managing conservator and Mother as possessory conservator of

4

Kendra.[6] Just over two weeks later, the trial court signed an amended final order. This appeal followed.

## II.    Mother's Due-Process Complaints

Mother raises a single issue on appeal that has two parts. In the first part, Mother argues that the trial court denied her due process when it denied her access to most of her children during the case without an initial hearing or a review hearing. Because Mother's complaints about any temporary orders are rendered moot by the final order, we resolve this part of Mother's issue against her.

### A.    Mother's due-process arguments focus on the visitation restrictions imposed by the trial court's temporary Status Hearing Order.

Mother's due-process arguments revolve around the temporary Status Hearing Order and the handwritten language suspending Mother's visitation with her three older children "pending recommendation from the children's therapist" and limiting her visitation with her youngest child to "one hour per week supervised by the [Department.]" Mother contends that prior to the Status Hearing, she had "visited all of her children" after their removal pursuant to the prior temporary schedule and that the Department's position on visitation changed the day of the Status Hearing without explanation.

---

[6]Mother states in her brief that the jury found that it was in the youngest child's (Kevin's) best interest for Mother to continue her relationship with him, her youngest child. The jury made this finding, however, with respect to only Kendra.

In making her due-process arguments, Mother challenges whether the trial court complied with Sections 263.108[7] and 263.109(a) and (b)[8] of the Texas Family Code, whether the Department presented evidence at the Status Hearing or at the following Permanency Hearing that supported the visitation restrictions imposed by the Status Hearing Order,[9] and whether the visitation restrictions imposed in the Status Hearing Order were logical.[10] She further argues that the handwritten notation giving the children's therapist the authority to decide whether she may have visitation with the three older children "effectively denied [Mother] all access to three of her children,

---

[7]Mother quotes Section 263.108 of the Texas Family Code to argue that the trial court was required to review the Department's Visitation Plan "[a]t the first hearing held under this chapter after the date an original or amended visitation plan was filed with the court." *See* Tex. Fam. Code Ann. § 263.108(a). Although the Status Hearing Order stated that the trial court had reviewed the plan, Mother argues that the plan was not drafted or filed with the court until days after the Status Hearing and that the plan was not reviewed at the November 2018 hearing.

[8]Mother argues that the Status Hearing Order did not state the reasons for finding that visitation was not in the children's best interests or outline specific steps she must take to be allowed visitation. *See* Tex. Fam. Code Ann. § 263.109(a), (b).

[9]Although the Status Hearing Order stated that the trial court had "reviewed the summary of medical care provided to the subject children," Mother argues that such information was not presented through expert testimony or admissible documents at the Status Hearing and that such information also was not all contained within the Department's Status Report.

[10]Mother contends that the trial court's decision to prevent her from having access to her three oldest children was "illogical" and "contrary to reason and erroneous as a matter of law" because it appointed her possessory conservator in the first place and because the court allowed her access to the youngest child.

6

while also denying her the remedy of contempt" because it gave the "the Department and its contractors (not the court or [Mother]) complete discretion as to [her] access to her children." According to Mother, the complete denial of her parental access amounted to a near-termination of parental rights. Mother contends that she was effectively denied her right of cross-examination because "[w]hatever the psychiatric evidence the trial court believed may have justified preventing [her] from regularly visiting with her children, such evidence was not presented at a hearing before the court."

For all of these reasons, Mother invokes the due-process clauses of the United States and Texas constitutions to argue that her due-process rights were violated because the trial court failed to state the reasons for its findings in the Status Hearing Order and failed to hold a hearing to admit evidence in favor of such findings. According to Mother, the trial court precluded her review and cross-examination of evidence supporting the cessation of visitation and issued a "blanket denial of access in its Status Hearing Order," focusing "exclusively on the children's immediate best interest" and "without regard to [Mother's] rights or the children's long-term interest[s]."

**B.      Mother's complaints about the temporary Status Hearing Order are moot.**

We do not reach the merits of Mother's arguments because we conclude that her complaints are moot. "[A] temporary order is superseded by the entry of a final order of termination, rendering moot any complaint about the temporary order." *In re J.F.G.,*

7

*III*, 500 S.W.3d 554, 559 (Tex. App.—Texarkana 2016, no pet.) (brackets in original); *see also In re Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at *5 n.5 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op.) (holding that appellant's complaints about child's removal are not proper in the context of an appeal from a final order terminating parental rights); *In re D.W.*, Nos. 01-13-00880-CV, 01-13-00883-CV, 01-13-00884-CV, 2014 WL 1494290, at *3 (Tex. App.—Houston [1st Dist.] Apr. 11, 2014, no pet.) (mem. op.) (holding that appellants' complaints regarding temporary orders appointing the Department as children's temporary sole managing conservator were moot because a final decree had been entered in each of the children's cases); *In re C.R.J.*, No. 06-13-00053-CV, 2014 WL 199209, at *2 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (holding that appellant's complaints about a trial court's holding of a temporary hearing or issuing temporary orders were rendered moot by the entry of a final modification order); *In re M.C.M.*, 57 S.W.3d 27, 37 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (holding that temporary order denying visitation was moot in light of trial court's final judgment terminating appellants' parental rights).

Because the Status Hearing Order is a temporary order and because a final order was entered in this case, Mother's due-process complaints are moot. *In re B.U.*, No. 02-15-00051-CV, 2016 WL 4474337, at *2 (Tex. App.—Fort Worth Aug. 25, 2016, pet. denied) (mem. op.) (citing *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 1988, no writ), and *Conway v. Irick*, 429 S.W.2d 648 (Tex. App.—Fort Worth 1968, writ ref'd)); *In re P.R.*, 994 S.W.2d 411, 417 (Tex. App.—Fort Worth 1999, pet.

dism'd w.o.j.), *disapproved on other grounds*, *In re J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002).

Accordingly, we overrule the first part of Mother's sole issue.

### III.    Mother's Complaints Regarding Trial Evidentiary Rulings

In the second part of her sole issue, Mother argues that the trial court failed to exclude the Status Hearing Order and "related testimony" and that the trial court failed to declare a mistrial. Mother argues that the erroneously admitted evidence violated Texas Rule of Evidence 605 and constituted an improper comment on the weight of the evidence. We resolve this part of Mother's sole issue against her.

### A.    Additional background: Testimony at issue on appeal and Mother's motion for mistrial.

The trial testimony that Mother complains about on appeal begins with the following testimony from the Department's caseworker during her examination by the attorney ad litem for some of the children:

> Q.    What visits were the parents having?
>
> A.    [Mother] had . . . visits with [Kevin], a few of them that occurred. I believe in the eight months we had about three visits.
>
> Q.    So during this eight-month period that she called about three times to check on the kids, she saw [Kevin] three times.
>
> A.    Correct.
>
> Q.    Did she see [Kent] or [David]?
>
> A.    No.

Mother also points to the following additional testimony during the caseworker's re-direct examination by the Department:

> Q. . . . . Now, you told [the children's attorney] that there had been three visits with [Kevin].
>
> A. Correct.
>
> Q. No visits with the other children.
>
> A. Correct.
>
> Q. And what were you waiting on so that you could implement visits with those kids?
>
> A. Recommendations from the therapist.
>
> Q. Okay. So at the point that you had the case, a therapist had recommended no visits.
>
> A. Prior to me having the case, yes.
>
> Q. Okay. That's kind of unusual in a CPS case. Would you agree?
>
> [MOTHER'S ATTORNEY]: Objection to speculation.
>
> THE COURT: Overruled.
>
> A. Yes.
>
> Q. . . . . The point of the visits is really more for the kids than the parents. Would you agree with that?
>
> A. Yes.
>
> Q. And so a therapist—a lot of therapists had recommended that visits were not a good idea.
>
> A. Correct.
>
> Q. All right. Do you know whether those visits have ever been reinstated?

> A.    I don't believe they have.

The Department's attorney then asked, "You used the words 'substantial evidence' when you were talking about the Department and [Mother], [Father] agreeing or disagreeing. What did you mean by 'substantial evidence'?" At that point, Mother's attorney asked to approach, and the trial court excused the jury.

Mother's attorney argued that the "line of questioning specifically regarding the visits being reinstated, the visits being stopped" violated the limine order regarding any references to findings made by the court. She added that "asking that question and asserting that the visits were reinstated, indicating that they had been stopped" invaded the province of the jury. Mother's attorney asked the trial court to instruct the jury to disregard the question, "Do you know whether those visits have ever been reinstated," and the witness's answer to that question. The trial court granted that request and later instructed the jury accordingly. But the trial court denied Mother's attorney's motion for a mistrial.

After the trial court denied the motion for mistrial and while still outside the jury's presence, the Department moved to admit a copy of the Status Hearing Order into evidence that redacted most of the paragraphs under "Findings" (in accordance with the limine order). Father's attorney objected on grounds that the handwritten

language restricting his visitation[11] could be construed as a comment on the evidence by the court and invaded the province of the jury. Mother's attorney joined in the objections, which the trial court overruled.

## B. We review a trial court's ruling on the admission of evidence and on a motion for mistrial for an abuse of discretion.

The admission or exclusion of evidence is committed to the trial court's sound discretion. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *In re M.R.*, No. 02-15-00221-CV, 2015 WL 6759249, at *6 (Tex. App.—Fort Worth 2015, no pet.) (mem. op.). We also review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *In re M.N.G.*, 147 S.W.3d 521, 530 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if it acts arbitrarily or unreasonably. *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *6 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.) (citing *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015)); *see also In re A.B.*, No. 02-14-00384-CV, 2015 WL 1967286, at *3 (Tex. App.—Fort Worth Apr. 30, 2015, no pet.) (mem. op.); *M.N.G.*, 147 S.W.3d at 530.

---

[11]The Status Hearing Order suspended Father's visitation as to all children pending recommendation from the children's therapist.

**C.** **Neither the caseworker's testimony nor the redacted Status Hearing Order violated Rule 605.**

We first address Mother's complaint that the admission of the caseworker's testimony and the redacted Status Hearing Order violated Texas Rule of Evidence 605. Under Texas Rule of Evidence 605, "[t]he presiding judge may not testify as a witness at the trial." Tex. R. Evid. 605. A "finding of fact" is a "determination by a judge . . . of a fact supported by the evidence in the record." *In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003) (citing Black's Law Dictionary 646 (7th ed. 1999)). Although "findings of fact" are not technically testimony, "orders submitted into evidence, containing findings based on pretrial evidence by the very judge presiding over the termination proceeding, could be, like a judicial comment on the weight of the evidence, a form of judicial influence no less proscribed than judicial testimony." *In re A.T.K.*, No. 02-11-00520-CV, 2012 WL 4450361, at *4 (Tex. App.—Fort Worth Sept. 27, 2012, no pet.) (mem. op.) (quoting *M.S.*, 115 S.W.3d at 538). "The question should be whether the judge's statement of fact is essential to the exercise of some judicial function or is the functional equivalent of witness testimony." *In re C.C.K.*, No. 02-12-00347-CV, 2013 WL 452163, at *33 & n.45 (Tex. App.—Fort Worth Feb. 7, 2013, no pet.) (mem. op.) (citing *Hammond v. State*, 799 S.W.2d 741, 746 (Tex. Crim. App. 1990), and noting that in *Bradley*

*v. State ex rel. White*, 990 S.W.2d 245, 248 (Tex. 1999), the Supreme Court of Texas relied on Texas Court of Criminal Appeals's interpretations of Rule 605).

Mother argues that "[b]y allowing testimony of the cessation of visits and admitting the Status Hearing Order with the text demanding such cessation, the jury was effectively told that the judge had already determined that [Mother] had endangered her children and that the judge had determined" that the children's removal from her possession was in the children's best interests. She focuses on the fact that the majority of paragraphs under the heading "Findings" were redacted, arguing that the redactions implied that "such judicial determinations were based upon evidence [(that, as explained above, she says was never presented)] and [the redacted] findings."

We do not agree that the admission of the Status Hearing Order violated Rule 605. The Status Hearing Order did not contain any factual findings by the presiding judge that Mother had endangered her children or that the children's removal from her possession was in the children's best interests. Rather, the handwritten statements added to the order were essential to the judge's judicial function of reviewing and modifying a visitation plan. *See* Tex. Fam. Code Ann. §§ 263.108, .202. Neither the handwritten language added to the Status Hearing Order nor the *existence* of redactions under "Findings" provided testimony as to facts disputed during the trial. *See In re A.L.W.*, No. 02-11-00480-CV, 2012 WL 5439008, at *11 (Tex. App.—Fort Worth Nov. 8, 2012, pet. denied) (mem. op.). On this record, we conclude that the admission of the Status Hearing Order with the handwritten language regarding visitation

14

limitations, even with the redacted findings, was not the functional equivalent of witness testimony.

Mother cites *In re T.T.*, 39 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2001, no pet.), in support of her Rule 605 argument, but the facts of that case are distinguishable. In *T.T.*, the temporary order contained the following express findings that were made by the same judge who presided over the trial:

> The Court specifically finds and all parties agree that the following orders for the safety and welfare of the children are in the best interest of the children:
>
> The Court finds pursuant to Tex. Fam. Code Sec. 262.201:
>
> (1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person(s) entitled to possession and for the children to remain in the home is contrary to the welfare of the children;
>
> (2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and
>
> (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children are returned home.

*Id.* at 358. On these facts, the appellate court held that the "trial judge's findings harmed [the appellant] because they told the jury that the trial judge had already decided [the appellant] could not protect her children, the very question the jury had to decide." *Id.* at 359. The Status Hearing Order in this case, however, does not contain any express findings similar to those in *T.T.* Mother cites no authority standing for the proposition

15

that Rule 605 applies when a jury could merely *infer* from redactions that a presiding judge had made findings that are not expressly set forth in the order admitted into evidence.[12]

Moreover, it is within the zone of reasonable disagreement as to whether the mere existence of redactions under "Findings" in the Status Hearing Order would cause a jury to infer that the presiding judge had found, as Mother contends, that Mother had endangered her children and that the children's removal from her possession was in the children's best interests, even in light of the handwritten language added to the order regarding visitation. Indeed, Mother does not point to any testimony or argument at trial where anyone drew any such connection between the redactions and the

---

[12]We also note that the judge who presided over the Status Hearing and who signed the Status Hearing Order (the Hon. Monte O. Lawlis) was not the same judge who presided over the trial (the Hon. Bruce McFarling). This fact alone may defeat Mother's Rule 605 argument. *See* Tex. R. Evid. 605 ("*The presiding judge* may not testify as a witness *at the trial*.") (emphases added). Rule 605, however, was amended in 2015; prior to that amendment, Rule 605 provided that "[t]he judge presiding *at the trial* may not testify *in that trial* as a witness." *See Hensarling v. State*, 829 S.W.2d 168, 170 (Tex. Crim. App. 1992) (quoting prior version of Rule 605 (emphases added)). Texas courts interpreted the prior version of Rule 605 as not applying to judges who were not the judge presiding at the trial. *See id.*, at 170–71; *see also In re S.G.S.*, 130 S.W.3d 223, 242 (Tex. App.—Beaumont 2004, no pet.) (holding that the prior version of Rule 605 did not apply to the admission of a Temporary Order Following Adversary Hearing or a Status Hearing Order because they were signed by a judge who was not the judge presiding over the trial). No party addresses the fact that Judge Lawlis signed the order at issue but did not preside over the trial. Regardless, any question about whether the 2015 amendment expands the scope of Rule 605 to reach a judge who had previously presided over a hearing but was not the judge presiding over the trial is not necessary for the disposition of this appeal because we would reach the same outcome in either instance. *See* Tex. R. App. P. 47.1.

16

handwritten language in the order. The closest Mother comes is her reference to the following portion of an attorney ad litem's closing argument:

> [Mother's] actions here in this trial, they've been acts of self-preservation, not love. They've been acts of, "It wasn't my fault this didn't get done; it was the providers' fault. It was someone else's fault. I don't know why I didn't call you, but maybe I didn't have your number. I have so many numbers."
>
> . . . .
>
> *You're not seeing your kids?* You're not calling me to check on them? I've given you my card. [Emphasis added.]

Mother argues that in making this statement, the children's attorney ad litem "directed the jury to the issue" and mocked Mother. We disagree.

The attorney ad litem's closing argument did not mention the Status Hearing Order or the redacted findings, nor did the attorney suggest to the jury any inferences to draw from that order. Instead, it is apparent, particularly when viewed in context, that the attorney ad litem's remarks were making the point that Mother was deflecting responsibility of her own choices onto others and were attacking Mother's credibility. Immediately prior to the argument quoted above, the attorney ad litem argued:

> Now, [Mother] begged you guys for a chance. She said she loves these kids. But her actions that you've heard about, her actions that the kids have testified about, the kids who lived in that home with her every day and with [Father] every day, that's not love.

Then, immediately following the portion of the argument quoted by Mother, the attorney ad litem argued: "Here in trial she's taken no responsibility for what's happened to these kids, for the things they've testified about, and offered no explanation, just it

17

didn't happen."[13] Accordingly, we conclude that the trial court's admission of the redacted Status Hearing Order did not violate Rule 605.

As to the caseworker's testimony, the caseworker did not testify as to any findings contained in the Status Hearing Order, nor did she even reference that or any other court order.[14] Although the parties and the court knew when the caseworker testified that the Status Hearing Order had imposed the conditions on visitation set forth by the handwritten language in the order, such information was not conveyed to the jury by the caseworker's testimony. Instead, the caseworker's testimony focused on a *therapist* serving as the gatekeeper of the children's visitation with Mother. Although a question posed to the caseworker asked about visits being "reinstated," neither the question nor the answer informed the jury that a judge, as opposed to a therapist, held

---

[13]Mother points to the following two questions from the jury during deliberations to also argue that "[c]learly, the jury was interested in this relationship": (1) "Does termination of a parent's rights result in the parent having no contact/visitation with the child?" and (2) "If one parent's rights are terminated and [the] other becomes managing conservator, can the parent as managing conservator allow visitation/access [with] the children?" Although the questions concerned the topic of visitation, they did not ask about any findings or comments made by a judge who presided in the case; they asked about a parent's future visitation rights under different scenarios.

[14]We note that Mother did not object on Rule 605 grounds to the above-quoted questions or answers from the caseworker's testimony. Rule 605, however, expressly states, "[a] party need not object to preserve the issue." Tex. R. Evid. 605. We assume without deciding that a party may raise an issue on appeal about a question or answer violating Rule 605 without a timely objection in the trial court, even if the witness (such as the caseworker here) who was testifying at trial was not the presiding judge.

the keys to visitation. Accordingly, we likewise conclude that the caseworker's testimony did not violate Texas Rule of Evidence 605.

**D.      To the extent Mother preserved anything for appellate review, the trial court did not err by admitting evidence over Mother's improper-comment-on-the-weight-of-the-evidence objection or by denying Mother's motion for mistrial.**

We now turn to Mother's arguments that the admission of the redacted Status Hearing Order and the caseworker's testimony constituted improper comments on the weight of the evidence and that the trial court failed to exclude such evidence and failed to grant her motion for mistrial.

**1.      It was within the zone of reasonable disagreement as to whether the admission of the Status Hearing Order constituted an improper comment on the weight of the evidence.**

As to the Status Hearing Order, we conclude that the trial court acted within its discretion by admitting that order.[15] A comment on the weight of the evidence may take many forms, but the Supreme Court of Texas specifically prohibits "judicial comments that indicate *the opinion of the trial judge* as to the verity or accuracy of the facts in inquiry." *M.S.*, 115 S.W.3d at 538 (emphasis added) (quoting *McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43, 45 (Tex. 1978)); *see also In re Commitment of Shelton*, No. 02-19-

---

[15]Mother's motion for mistrial was based solely on the caseworker's testimony because the Department had not yet moved to admit the Status Hearing Order when the trial court ruled on the motion. Thus, we will not analyze the admission of the Status Hearing Order with respect to the motion for mistrial.

00033-CV, 2020 WL 1887722, at *12 n.7 (Tex. App.—Fort Worth Apr. 16, 2020, no pet. h.) (mem. op. on reh'g); *C.C.K.*, 2013 WL 452163, at *34.

We conclude that it was within the zone of reasonable disagreement as to whether the admission of the Status Hearing Order conveyed to the jury an opinion by the presiding judge as to the verity or accuracy of the facts in inquiry—namely whether, as Mother argues, that Mother had endangered and could not protect her children and that it was in the children's best interests to be removed from Mother's possession. The order itself contained no express findings to that effect. Mother's argument relies upon a jury inferring that the trial court held such opinions because the order restricted Mother's visitation with the three oldest children pending a therapist's recommendation and because the order contained redacted findings. However, the order also contained information contrary to any such inference: it appointed Mother as temporary possessory conservator and allowed her weekly supervised visitation with her youngest child. As Mother herself argues on appeal, "If [Mother] was a threat to her oldest children, why wouldn't such a threat likewise apply to her youngest child? If anything, a threat to the youngest child . . . would be even more serious since a less mature child would be less likely to protect himself or report abuse." On this record, we conclude that the trial court did not abuse its discretion by admitting the redacted Status Hearing Order over Mother's objection.

## 2. Mother did not object to the majority of the caseworker's testimony, preserving nothing for our review.

We will now address Mother's complaints regarding the admission of the caseworker's testimony. Mother, however, is not clear about what testimony she is specifically complaining about on appeal. We have liberally construed her brief as fairly including a challenge to the admission of all of the above-quoted caseworker testimony. *See* Tex. R. App. P. 38.1(f). In order to address this issue, we will first address the portion the caseworker's testimony up through, but not including, the question asking about visitation being reinstated because Mother obtained an instruction to disregard that last question. That said, Mother failed to preserve anything for our review regarding the first portion of the caseworker's testimony.

To preserve error for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the content of the request, objection, or motion, and obtain a ruling. Tex. R. App. P. 33.1; *see also Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007); *In re A.H.*, No. 02-17-00222-CV, 2017 WL 5180785, at *12 (Tex. App.—Fort Worth Nov. 9, 2017, pet. denied) (mem. op.); *Swilley v. State*, 465 S.W.3d 789, 796 (Tex. App.—Fort Worth 2015, no pet.). If a party fails to object until after an objectionable question has been asked and answered, and if she can show no legitimate reasons to justify the delay, then her objection is untimely, and the party waives error. *Swilley*, 465 S.W.3d at 796.

Here, assuming that the questions at issue were objectionable, Mother did not object to any of them before the caseworker answered, nor did she object immediately after the caseworker answered.[16] Mother does not acknowledge on appeal her complete lack of objection to any of the caseworker's testimony on improper-comment-on-the-weight-of-the-evidence grounds and, thus, offers no legitimate reason to justify her delay in raising timely and specific objections to this testimony. Thus, Mother waived her complaint to the admission of this portion of the caseworker's testimony. *See* Tex. R. App. P. 33.1; *Swilley*, 465 S.W.3d at 795–96; *Remsnyder v. State*, No. 02-13-00314-CR, 2015 WL 831468, at *2 (Tex. App.—Fort Worth Feb. 26, 2015, no pet.) (mem. op., not designated for publication).

Mother also did not premise her motion for mistrial upon any complaint that the caseworker's answers to this first set of questions impermissibly commented on the weight of the evidence. Like an objection, a motion for mistrial must be both timely and specific. *Legans v. State*, No. 02-18-00229-CR, 2019 WL 4019680, at *2 (Tex. App.—Fort Worth Aug. 27, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004)). A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *See id.* A mistrial is not required on the basis of an unpreserved evidentiary complaint. *Swilley*, 465 S.W.3d at

---

[16]Mother objected to one question on speculation grounds, as shown in the quotation above. The trial court's ruling on that objection is not challenged on appeal.

22

796 (citing *Glassey v. State*, 117 S.W.3d 424, 432 (Tex. App.—Fort Worth 2003, no pet.)). Here, even if the trial court had understood Mother's motion for mistrial as including a complaint about the first portion of the caseworker's testimony, the motion was not timely, and Mother had not timely objected to the questions. Mother offers no explanation for her delay in raising a complaint about this testimony in the trial court, if she did at all. Thus, the trial court did not abuse its discretion by denying the motion for mistrial to the extent the motion was based on the first portion of the caseworker's testimony.

### 3. Mother fails to explain how the trial court's instruction to disregard testimony about visitation being reinstated was not sufficient to cure the harm, if any, caused by that testimony.

We assume without deciding that Mother raised a timely and specific complaint to the trial court with respect to the question, "Do you know whether those visits have ever been reinstated," and the caseworker's answer, "I don't believe they have." This single question-and-answer set was the only one that Mother expressly referenced prior to moving for a mistrial. As to this question, however, Mother fails to acknowledge on appeal that the trial court granted Mother's request for an instruction to the jury to disregard that question and answer.

When, as in this case, a trial court instructs a jury to disregard evidence, the reviewing court may review the evidence to determine whether an instruction to disregard was adequate to cure its admission. *A.B.*, 2015 WL 1967286, at *3 (citing *In re City of Hous.*, 418 S.W.3d 388, 397 (Tex. App.—Houston [1st Dist.] 2013, orig.

23

proceeding)). A new trial may be justified if the impact of the improper testimony was incurable by the trial court's instructions. *Id.*

On appeal, like in the trial court, Mother fails to argue that (much less explain why) the trial court's instruction was insufficient to cure any harm, if any, in the admission of the caseworker's answer to the one question Mother complained about in the trial court. *See Wilson v. State*, 7 S.W.3d 136, 148 (Tex. Crim. App. 1999) (holding that an instruction to disregard normally cures the error unless it was so egregious that an instruction would have little effect); *Griffin v. State*, No. 07-03-0060-CR, 2004 WL 1460132, at *2 (Tex. App.—Amarillo June 29, 2004, no pet.) (not designated for publication). As explained above, the focus of the question was a therapist's role in determining when visitation could take place. Thus, any connection between this one question and the Status Hearing Order or any order or opinion of the trial court was so remote, if it existed at all, that we cannot say that the instruction to disregard was insufficient to cure the harm, if any, caused by the caseworker's testimony. Thus, we conclude that the trial court did not abuse its discretion by denying Mother's motion for mistrial.[17]

Accordingly, we overrule the second part of Mother's sole issue on appeal.

---

[17]To the extent Mother's motion for mistrial could be construed as having raised any Rule 605 complaint to the trial court regarding the caseworker's testimony, we likewise conclude that the trial court did not abuse its discretion by denying Mother's motion for mistrial on Rule 605 grounds for the same reasons set forth above.

## IV.    Conclusion

Having overruled all parts of Mother's sole issue, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  July 30, 2020